**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SARA RAE O.[1],**

   **Plaintiff,**

          **Civil Action 2:23-cv-1438**
          **Judge James L. Graham**
          **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

   **Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

   Plaintiff, Sara Rae O., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 7). The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (ECF No. 8) and **AFFIRM** the Commissioner's decision.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

## I.     BACKGROUND

Plaintiff protectively applied for DIB on October 7, 2018, alleging that she has been disabled since April 12, 2018, due to migraines; fibromyalgia; chronic pain; seizures; incontinence; memory problems; conversion disorder; and degeneration of her left shoulder.  (R. at 36, 166-72, 185.)  Plaintiff's application was denied initially in April 2019 and upon reconsideration in July 2019.  (R. at 79-109, 120-26.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 127-28.)  On April 11, 2022, Plaintiff, who was represented by counsel, appeared and testified at a video hearing held by an administrative law judge. (R. at 33-60.)  On May 3, 2022, Kimberly S. Cromer (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-32.)  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. at 1-6.)  This matter is properly before this Court for review.

## II.    RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports and testimony as to her conditions and resulting limitations.  Given the claimed errors raised by the Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.   ADMINISTRATIVE DECISION

On May 3, 2022, the ALJ issued her decision.  (R. at 12-32.)  The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31,

2019.  (R. at 18.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of April 12, 2018 through her date last insured of December 31, 2019.  (*Id.*)  The ALJ found that, through her date last insured, Plaintiff had the following severe impairments: obesity; migraines; fibromyalgia with chronic pain; and a history of degenerative joint disease in the left shoulder.  (*Id.*)  The ALJ further found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 22.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> Through the date last insured, [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: [Plaintiff] is able to push/pull within the sedentary capacities. [Plaintiff] is unable to climb ladders,

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ropes, or scaffolds, but can occasionally climb ramps or stairs. [Plaintiff] can occasionally balance, stoop, kneel, and crouch, but is unable to crawl. [Plaintiff] can have no exposure to hazardous machinery, cannot work at unprotected heights, nor can she engage in commercial driving. [Plaintiff] can perform occasional bilateral operation of foot controls, occasional bilateral overhead reaching, and avoid concentrated exposure to vibration.

(R. at 23.)

At step four of the sequential process, the ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work as a court clerk and police records clerk as this work did not require the performance of work-related activities precluded by her RFC. (R. at 27.) The ALJ made an alternate finding at step five, relying on the VE's testimony, and concluded that through the date last insured, Plaintiff would have been able to perform jobs that exist in significant numbers in the national economy, such as an inspector, table worker, or order clerk. (R. at 28.) The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from April 12, 2018, the amended alleged onset date, through December 31, 2019, the date last insured. (R. at 29.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

Plaintiff raises two issues in her Statement of Errors.  First, she contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ omitted any limitation relating to Plaintiff's use of a doctor-prescribed wheelchair.  Plaintiff characterizes her second claimed error as relating to the ALJ's conclusion that Plaintiff's mental health impairments were not severe.  Although generally raised as an error in the ALJ's step two analysis, Plaintiff frames her claim as arising at step three.  Nevertheless, she proceeds to argue

her second claim in terms of the ALJ's failure to properly consider the consistency or supportability of the opinions provided by Courtney Zeune, Psy.D., the state agency psychologist at the initial level, and Dr. Sudhir Dubey, Psy.D., the consultative psychologist. Beyond this, but still within the confines of her second claimed error, Plaintiff argues that the ALJ did not comply with the requirements of *Earley v. Comm'r of Soc. Sec.,* 893 F.3d 929 (6th Cir. 2018). The Undersigned considers each of Plaintiff's two claimed errors in turn.

### A. The RFC is Supported by Substantial Evidence

Plaintiff contends that her wheelchair is medically required as contemplated by SSR 96-9p relating to assistive devices. For an assistive device to be considered medically necessary, there must be medical documentation establishing the need for the device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Plaintiff asserts that both requirements are met here. In support, Plaintiff's cites Dr. Hackshaw's prescription for a wheelchair for assistance in ambulation on an "as needed" basis. (*See* R. at 395.)

For an assistive device to be considered a restriction or limitation, there must be sufficient evidence in the record to obligate the ALJ to conclude that the device is "medically necessary," based on a showing that it is "more than just a subjective desire on the part of the plaintiff" to use it." *See Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *10 (M.D. Tenn. March 6, 2013) (internal citations omitted). Generally, an ALJ's finding that an assistive device is not medically necessary is error when: (i) the claimant has been prescribed an assistive

6

device, (ii) the ALJ did not include the use of the device in the RFC assessment, and (iii) did not explain the omission. *Cruz-Ridolfi v. Comm'r of Soc. Sec.,* No. 1:17-CV-1075, 2018 WL 1136119, at *15 (N.D. Ohio Feb. 12, 2018).

Here, the ALJ applied proper legal standards and reached a determination supported by substantial evidence in deciding not to include an RFC limitation based on Plaintiff's use of a wheelchair. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ noted that Plaintiff had been prescribed a disability placard and a wheelchair for use in ambulation as needed. (R. at 25 citing R. at 394, 395.) However, the ALJ found that the wheelchair was not medically necessary and explained her reasons for that finding. And, as required, the ALJ supported her reasoning with substantial evidence. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. For example, the ALJ noted (1) the conservative nature of Plaintiff's treatment, including a lack of required inpatient treatment or emergency interventions for any severe medical condition; (2) musculoskeletal examinations showing generally normal strength and normal gait at times with an antalgic gait at worst when Plaintiff was not assisted by her wheelchair; and (3) the lack of any objective support for Plaintiff's alleged dizziness or lower extremity dysfunction. (R. at 26). The ALJ's conclusions are supported by the record.

First, as the ALJ discussed in her opinion, treatment notes from January 16, 2019, indicate that "[m]uscles of both upper and lower extremities had no focal atrophy," "intact sensation to all four limbs" and "an unsteady tandem gait." (R. at 25 citing R. at 386). Those same progress notes confirm that Plaintiff "walked about with normal turns and speed of ambulation." (R. at 386, 481.) The ALJ also discussed rheumatology notes from August 14,

2019, stating that Plaintiff had normal range of motion in the upper and lower extremities, normal gait, and 5/5 strength in upper and lower extremity flexor and extensor muscle groups with give way muscle weakness. (R. at 25 citing R. at 463; *see also* R. at 537; R. at 582, progress notes dated July 17, 2017.) Other progress notes from the period at issue also document normal gait, including notes dated March 13, 2018 (R. at 284, 550 "Normal gait including tandem gait") and July 3, 2018 (R. at 518 "Motor 5/5 gait WNL"). Although Plaintiff claims that objective evidence supports her lower extremity dysfunction, she fails to identify such support.

Additionally, despite Plaintiff's challenge, the ALJ's characterization of the medical record as it pertains to Plaintiff's treatment and dizziness symptoms also is well-supported. First, the ALJ notes conservative treatment and a lack of required inpatient treatment or emergency interventions related to this issue. (R. at 26.) This view is confirmed by various progress notes documenting a history of treatment limited to various medications. (*See, e.g.,* R. at 523, 538.) Further, Dr. Hackshaw, despite having prescribed a wheelchair for Plaintiff's use, limited his follow-up appointments with Plaintiff to yearly. (R. at 466, 539.) And, notably, although an MRI report dated December 30, 2017, reflects that Plaintiff exhibited seizure activity during the scan, no medications were administered and Plaintiff "elected not to go to the hospital." (R. at 570.) Another reported unresponsive episode on August 29, 2016, reflects only that Plaintiff was transported to the emergency department. (R. at 601.)

The ALJ's assessment of the record as lacking in objective support for Plaintiff's claims of dizziness also appears accurate. To be sure, as Plaintiff represents, the record contains numerous references to Plaintiff's dizziness. These many references, although acknowledged by

the ALJ (R. at 24) are largely limited to self-reports offered at various appointments. (*See, e.g.*, R. at 238, 575 reflecting Plaintiff's self-report of seizures with "a warning of dizziness and room spinning;" R. at 434 "current medical problems are reported to be … dizziness;" R. at 437 "Husband states she has … dizziness ….;" R. at 463 "She states that she has a seizure with dizziness;" R. at 506, 521 describing reported "chronic" dizziness as a "medication side effect;" R. at 523 "reports her dizziness is almost constant …. She doesn't have medication to take for the dizziness.") These are subjective-symptom complaints, and the ALJ is not required to accept them when they are "inconsistent with objective medical or other evidence." *Avery v. Comm'r of Soc. Sec.*, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020).

Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1502(f); 20 C.F.R. § 404.1513. Such evidence related to Plaintiff's claimed need for a wheelchair is limited here as noted by the ALJ. To the extent such evidence exists in the record, it appears confined to discussions of reports from two electroencephalograms ("EEG"). The first EEG was video monitored and occurred in November 2016. As for any seizure disorder detected, it was classed as non-epileptic in nature. (R. at 482.) The second report, dated April 6, 2018, reflected a "NORMAL 48 HOUR AMB EEG," a finding that was "somewhat limited as [Plaintiff] did not return a diary of symptoms/spells." (R. at 546.) At a follow-up appointment on April 26, 2018, Plaintiff advised that she "had [] two convulsive episodes with preceding vertigo as well as a staring episode." (R. at 541.) Dr. Hackshaw opined that Plaintiff's "'seizures' appeared to be more pain related behavior than true electrical activity stimulated." (R. at 278.)

For her part, Plaintiff seizes on the ALJ's statement regarding the use of a wheelchair only outside Plaintiff's home and argues that this is an insufficient basis for dismissing the need for a wheelchair.  A review of Plaintiff's testimony confirms, as Plaintiff suggests, that the reason for her lack of home use was not a factor of need but was because the "doors and stuff aren't wide enough for the wheelchair." (R. at 53.)  Instead, Plaintiff explained, she uses a walker to get around inside her house that has a seat on it allowing her to "scoot" if needed.  (*Id*.) As discussed, however, this is not the sole basis for the ALJ's reasoning.  Thus, Plaintiff's argument on this point has no merit.

Similarly, the Undersigned notes that Plaintiff's claim largely relies on an overreading of the circumstances surrounding Dr. Hackshaw's prescription.  Plaintiff saw Dr. Hackshaw for an initial visit on April 26, 2018, and, at the conclusion of that visit, among other prescriptions, he prescribed a wheelchair for Plaintiff's use.  Dr. Hackshaw's progress notes from that initial visit indicate under Plaintiff's "Past Medical History" that "[s]he has a current medication list which includes … wheelchair …." (R. at 277.)   Further, Plaintiff grossly mischaracterizes the record in arguing that Dr. Hackshaw ordered her "to avoid activities wherein she could harm herself if she lost consciousness and stated that her ongoing seizure-like spells posed an imminent risk to her safety and life, because they could cause her injury or death." (ECF No. 8 at 14.)  A significantly more accurate reading of Dr. Hackshaw's progress notes from that date reveals that he was citing the "Impression/Plan" from Dr. Bryan Berger, the physician who ordered the

10

video-EEG.  (R. at 276.)  Those "impressions," although undated, appear to have been offered prior to Plaintiff undergoing the video monitored EEG in November 2016.[3]

Finally, Plaintiff accuses the ALJ of cherry picking through the record to arrive at her conclusion.  An allegation that an ALJ cherry-picked the evidence "is seldom successful because crediting it would require a court to re-weigh record evidence."  *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")).  The Court declines to do so here.

In sum, the record confirms the existence of Plaintiff's prescription for a wheelchair and, arguably, the circumstances under which it was needed.  The ALJ explained her reasoning for not including such a limitation in the RFC.  The ALJ's conclusion that Plaintiff's wheelchair was not medically necessary is supported by substantial evidence.  Although Plaintiff may disagree with the ALJ's decision, she has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley*, 581 F.3d 399, 406.  Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand.

---

[3] The video-monitored EEG was undertaken from November 8, 2016 to November 13, 2016.  (R. at 482.)  Plaintiff's birthdate is November 9, 1977. (R. at 27.)  Dr. Berger's "Impression/Plan" cited by Dr. Hackshaw refers to Plaintiff as a "38 y.o. female."  This would be consistent with Plaintiff's consultation with Dr. Berger in 2016, prior to the ordered EEG.  On the other hand, at the time of Plaintiff's initial evaluation with Dr. Hackshaw, on April 26, 2018, she would have been 40 years old.

11

*Id*.  Accordingly, the Undersigned finds no error in the ALJ's decision not to include an RFC limitation relating to Plaintiff's use of a wheelchair.

### B.  Plaintiff's Mental Health Impairments

In essence, Plaintiff frames her claim that the ALJ should have found her mental health impairments to be severe as a claim that the ALJ did not address the issues of supportability and consistency in evaluating the opinions of Dr. Zeune and Dr. Dubney.  That is, Plaintiff does not argue that the ALJ erred in failing to find her mental health issues to be a severe impairment nor does she set forth evidence in support of such an argument.  Indeed, in her Statement of Errors, Plaintiff fails to identify the precise nature of her mental health impairments.  Moreover, she does not at all address the issue of her alleged mental health impairments in her Reply, apparently resting entirely on a catchall incorporation by reference of her prior arguments to confirm that she does not intend to abandon this claim.  Nevertheless, the Undersigned notes that the ALJ found that Plaintiff's conversion disorder with psychogenic seizure symptoms was a medically determinable mental impairment.  (R. at 19.)

Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed.  *See* 20 C.F.R. § 404.1513(a), 404.1520c (2017).  A claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations."  20 C.F.R. § 404.1545(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in his or her case file.  *Id.*  The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4)

evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 404.1520c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.*

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

13

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).  "By contrast, 'consistency' involves comparing a medical opinion or prior administrative medical finding with *the evidence from other medical sources and nonmedical sources* in the claim." *Cindy F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2) (emphasis added)).

The starting point for the Undersigned's analysis of Plaintiff's claim, as understood, is the ALJ's discussion of the opinions at issue.  The ALJ had this to say about the opinions of the State Agency reviewing psychologists, Dr. Zeune and Dr. Savitscus:

In a psychiatric review technique dated April 5, 2019, State agency psychological consultant Courtney Zeune, Psy.D., assessed [Plaintiff]'s "paragraph B" criteria as moderate limitations in the abilities to understand, remember, or apply information,

14

moderate limitations in the abilities to interact with others; moderate limitations in the abilities to concentrate, persist, or maintain pace: and moderate limitations in the abilities to adapt or manage oneself (Exhibit B3A). At reconsideration, State agency psychological consultant Juliette Savitscus, Ph.D., indicted she was adopting the prior Administrative Law Judge's finding in assessing mild limitations in the abilities to understand, remember, or apply information, mild limitations in the abilities to interact with others; mild limitations in the abilities to concentrate, persist, or maintain pace: and no limitations in the abilities to adapt or manage oneself (Exhibit B5A). In making this determination Dr. Savitscus indicated that her finding differed from the initial finding in that the premise for non-adoption at the initial finding was unclear, and stated only that it was due to evidence that suggested that [Plaintiff]'s current impairment was more than not severe. However, Dr. Savitscus found it is more appropriate to compare functioning rather than conclusions, that [Plaintiff]'s functioning was similar to functioning at the time of the prior Administrative Law Judge's findings with [Plaintiff] able to do self-care and read for pleasure (Exhibit B5A, page 8). Dr. Savitscus concluded that given the similarity in functioning, the prior Administrative Law Judge's findings were adopted (Exhibit B5A, page 8). The undersigned generally agrees with Dr. Savitscus' assessment in light of the minimal treatment evidence of record and [Plaintiff]'s functional abilities as reflected in the evidence discussed above. For this reason, the undersigned has found the initial assessment unpersuasive and Dr. Savitscus' assessment persuasive.

(R. at 21.)

The ALJ then discussed Dr. Dubey's opinion as follows:

On March 25, 2019, [Plaintiff] underwent a psychological consultative evaluation with Sudhir Dubey, Psy.D., alleging disability due to seizure disorder including pseudo seizures, chronic all-over pain, migraines, and fibromyalgia (Exhibit B5F, page 1). [Plaintiff] described her moods as okay, noted sleep disturbances, but otherwise no current mental health care treatment nor history of psychiatric hospitalizations (Exhibit B5F, page 2). Regarding her activities of daily living, [Plaintiff] reported independence with washing up and showering, changing clothes, shopping for personal items, caring for pets, managing medications, and managing a daily schedule (Exhibit B5F, page 3). However, she reported needing help with managing money and doing basic paperwork because of memory problems and getting rides from others to get around (Exhibit B5F, page 3). [Plaintiff] noted current recreational activities including reading, listening to music, computer activities on her phone and watching television (Exhibit B5F, page 3). Mental status examination was notable for [Plaintiff] being oriented to person, place, time, and evaluation situation; no trouble concentrating observed; had coherent and logical

15

thought processes; average range of math skills; average general fund of knowledge; appropriate reasoning and judgment; and estimated average range of cognitive functioning (Exhibit B5F, pages 3-4). Dr. Dubey diagnosed unspecified neurocognitive disorder and opined: [Plaintiff] would be able to understand, remember, and carry out simple instructions independently, such as one-step processes; would not be able to understand, remember, and carry out multi-step instructions independently and would be able to perform these types of tasks with supervision; would be able to maintain persistence and pace to remember and carry out simple instructions independently; would not be able to maintain persistence and pace to remember and carry out multi-step instructions independently and would be able to perform these types of tasks with supervision; will not have issues dealing with coworkers and supervisors; and will have some issues dealing with work pressure (Exhibit B5F, pages 5-7). The undersigned has found this assessment persuasive to the extent it supports the non-severe findings made herein. Notably, despite Dr. Dubey's generally unremarkable findings during mental status examination, her mental health limitations suggests somewhat greater functional limitations than supported by either her objective examination or the record as a whole. In this regard, greater reliance has been placed on Dr. Savitscus' assessment, as she had the opportunity to evaluate not only Dr. Dubey's assessment but a greater portion of the record as whole.

(R. at 21-22.)

The Undersigned finds that the ALJ fulfilled her duty to evaluate both the supportability and consistency of Dr. Zeune's and Dr. Dubey's findings. As the above excerpt confirms, Plaintiff's argument that the ALJ failed to consider the supportability of Dr. Dubey's assessment is simply wrong. The ALJ specifically stated that Dr. Dubey's opined limitations were not supported by her objective examination, the details of which the ALJ set out earlier in the same paragraph. (R. at 22.) And, although the ALJ may not have specifically used the term consistency, this "magic word" is not required. Significantly, as the ALJ noted, there is minimal treatment evidence of record regarding Plaintiff's alleged mental impairment. Indeed, Dr. Dubey's assessment confirms that, at the time of Plaintiff's evaluation, Plaintiff reported no past or current

16

mental health treatment.  (R. at 353, 355.)[4]  Nevertheless, when the ALJ compared Dr. Dubey's opinion with Dr. Savitcsus's later opinion, she was discussing its consistency with the evidence of record as a whole.

Further, Dr. Zeune completed a disability determination, at the initial level, on April 5, 2019.  (R. at 85-92.)  As the ALJ's discussion of that opinion reflects, Dr. Zeune's narrative is extremely limited, stating only that "[t]he ALJ decision dated 4/11/18 [] is not being adopted due to new and material evidence which suggests more than non severe psych impairment currently."  (R. at 88.)  Among this "new and material evidence" relied upon by Dr. Zeune was Dr. Dubey's assessment from the March 25, 2019, consultative examination.  (R. at 87.)  As discussed above, Dr. Dubey's assessment contained "generally unremarkable findings."  (R. at 354-356.)  Even though the ALJ did not necessarily use the term supportability to describe the relationship between Dr. Zeune's and Dr. Dubey's's opinion, the ALJ, in endorsing Dr. Savitscus's opinion that Dr. Zeune's premise was unclear, sufficiently explained her decision that Dr. Zeune's opinion was not supported.  (R. at 21.)  And, again, when the ALJ compared Dr. Zeune's opinion with Dr. Savitcsus's later opinion, she was discussing consistency with the evidence of record as a whole.

---

[4] The record reflects that Plaintiff underwent a diagnostic intake assessment with Mid-Ohio Psychological Services ("MOPS") on April 18, 2019, a date after the opinions at issue here. The Notes of that assessment indicate that Plaintiff's stated reason for referral was "that the social security office has been insisting that she come for treatment."  (R. at 370.)  Further, Notes dated October 11, 2019, reflect that Plaintiff did not plan on returning to counseling services upon being advised her clinician was leaving the practice.  (R. at 414.)   The ALJ noted Plaintiff's treatment at MOPS in her discussion of Plaintiff's medically determinable mental impairments.  (R. at 19-20.)

17

Finally, there is no merit to Plaintiff's claim that the ALJ failed to fulfill her obligation under *Earley*.  As discussed, the ALJ based her conclusion on medical evidence of record obtained after the previous ALJ's decision and, therefore, provided the fresh look to which Plaintiff was entitled.  After the ALJ thoroughly reviewed all the evidence, she then reasonably concluded that the new evidence did not establish greater mental limitations than those found in the earlier RFC.  For her part, Plaintiff has not shown that the ALJ erred by failing to fully account for her alleged impairments and resulting limitations in the mental RFC finding. Plaintiff has identified no evidence in the record requiring the inclusion of greater limitations than those found by ALJ.  Indeed, Plaintiff does not even offer any argument that her mental health impairment was more severe than the ALJ determined.  For all of these reasons, the Undersigned finds no error in the ALJ's consideration of Plaintiff's mental impairments.

## VI.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 8) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:    **March 22, 2024**                           */s/ Elizabeth A. Preston Deavers*
                                                       **ELIZABETH A. PRESTON DEAVERS**
                                                       **UNITED STATES MAGISTRATE JUDGE**

19